Warren D. Andreas, Legal Counsel Unified School District No. 465 State Bank Building, Suite 303 Winfield, Kansas 67156
Dear Mr. Andreas:
As legal counsel for Unified School District No. 465, you request our opinion regarding whether incident reports pertaining to the suspension or expulsion of pupils with disabilities may include personally identifiable information. As a basis for your request, you present the following scenario:
 "During the 1998-99 school year, the Kansas State Department of Education (KSDE) is requiring school districts to complete an incident report form for students with disabilities who have been suspended or expelled from school for one or more days. This form requests the districts to share personally identifiable information (i.e. student's name, social security number, and date of birth) with state department officials who are not directly involved with the education of the individual student. The Cowley County Coop's Advisory Board believes that this is a violation of the confidentiality standards imposed on districts when dealing with student records. The superintendents are willing to share information regarding days suspended and incidents for anonymously identified special education students. They are not willing to share information that can be personally traced back to an individual student. The basis of this objection is that this disclosure would violate the confidentiality standard established by the U.S. Family Educational Rights and Privacy Act (FERPA) and possibly other statutes and case law."[1]
The Kansas State Department of Education believes the disclosure of the personally identifiable information is required so that it may fulfill its obligations under 20 U.S.C.A. § 1412(a)(22)(A) and20 U.S.C.A. § 1418(a)(1)(A)(vii).
In order to qualify for Federal assistance under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C.A. §§ 1400 — 1485, the State must demonstrate that it meets each of the conditions set forth in20 U.S.C.A. § 1412. Subsection (22) of 20 U.S.C.A. § 1412 requires the Kansas State Department of Education to examine data to determine whether there are significant discrepancies in the rate of long-term suspensions and expulsions of children with disabilities "(i) among local educational agencies in the State; or (ii) when compared to such rates for nondisabled children within such agencies." The Kansas State Department of Education is also required under the IDEA to provide data to the Secretary of Education regarding "the number of children with disabilities, by race, ethnicity, and disability category, who under subparagraphs (A)(ii) and (B) of section 1415(k)(1) of this title, are removed to an interim alternative educational setting. . . ."[2] To meet its obligations, the State Department of Education has developed an "Incidence Report of Disciplinary Action for Kansas Special Education Students" to be completed by the unified school districts. Information to be completed by the school districts includes the pupil's name, pupil's social security number, pupil's date of birth, the basis for removal from the current placement, and whether the act resulted in suspension or expulsion of the pupil.
The Family Educational Rights and Privacy Act (FERPA),20 U.S.C.A. § 1232g, regulates access to student educational records.[3]
"The statute's apparent purpose is to ensure access to educational records for students and parents and to protect the privacy of such records from the public at large."[4] Subsection (b)(1) of the Act provides in part:
 "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization, other than to the following — "[5]
The Act then lists the entities to which student records may be released and the conditions under which the student records may be released. Included among the entities are "authorized representatives of (i) the Comptroller General of the United States, (ii) the Secretary, or (iii) State educational authorities under the conditions set forth in paragraph (3) of this subsection. . . ."[6]
The Act further provides in subsection (b)(5):
 "Nothing in this section shall be construed to prohibit State and local educational officials from having access to student or other records which may be necessary in connection with the audit and evaluation of any federally or State supported education program or in connection with the enforcement of the Federal legal requirements which relate to any such program, subject to the conditions specified in the proviso in paragraph (3) [of 20 U.S.C.A. § 1232g(b)]."[7]
Paragraph (3) of 20 U.S.C.A. § 1232g(b) states that the subsection shall not preclude "State educational authorities from having access to student or other records which may be necessary in connection with the audit and evaluation of Federally-supported education programs, or in connection with the enforcement of the Federal legal requirements which relate to such programs. . . ." The paragraph includes the proviso that "except when collection of personally identifiable information is specifically authorized by Federal law, any data collected by such officials shall be protected in a manner which will not permit the personal identification of students and their parents by other than those officials. . . ."[8]
In interpreting a statute, it is the task of the Court "to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive."[9] "The starting point for interpretation of a statute is the language of the statute itself. If the language of a statute is clear and unambiguous, then the court's inquiry ends and the plain meaning of the language is conclusive except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intention of the drafters, or when a plain meaning interpretation would lead to patently absurd consequences."[10]
"A natural and logical interpretation of the language [of20 U.S.C.A. § 1232g] would be that Congress was creating an exception for State and local officials in the field of education."[11] State educational authorities are among the entities listed under20 U.S.C.A. § 1232g(b)(1)(C) which may receive records containing personally identifiable information contained in educational records that are subject to the FERPA. Likewise, the receipt of personally identifiable information is permissible under the IDEA when the information is used to examine the rate of long-term suspensions and expulsions of children with disabilities, or to provide data to the Secretary of Education regarding the number of children with disabilities, by race, ethnicity, and disability category, who are removed to an interim alternative educational setting. The information must be maintained by the State educational officials in such a manner which will not permit the personal identification of pupils and their parents by persons other than those officials.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Correspondence, Warren D. Andreas, September 14, 1998.
[2] 20 U.S.C.A. § 1418(a)(1)(A)(vii).
[3] Keyes v. Congress of Hispanic Educators, 902 F. Supp. 1274,1309 (D.Colo. 1995).
[4] Student Press Law Center v. Alexander, 778 F. Supp. 1227, 1228
(D.D.C. 1991).
[5] 20 U.S.C.A. § 1232g(b)(1).
[6] 20 U.S.C.A. § 1232g(b)(1)(C).
[7] 20 U.S.C.A. § 1232g(b)(5).
[8] 20 U.S.C.A. § 1232g(b)(3).
[9] Negonsott v. Samuels, 507 U.S. 99, 104, 122 L.Ed.2d 457,113 S.Ct. 1119 (1993) (citation and quotation marks omitted).
[10] National Union Fire Ins. Co. of Pittsburgh, Pa., v. MidlandBancor, Inc., 854 F. Supp. 782, 787 (citations and internal quotation marks omitted), amended on reconsideration 869 F. Supp. 880 (D.Kan. 1994).
[11] Board of Educ. of City of New York v. Regan, 500 N.Y.S.2d 978, 980
(Sup. 1986).