**UNITED STATES of America, Plaintiff,**

v.

**Matthew J. CHORICE, et al., Defendants,**

**Roger Barbieri and Vito Barbieri, Defendants and Third–Party Plaintiffs,**

**Federal Deposit Insurance Corporation, Third–Party Defendant.**

No. 93–1245–CV–W–1.

United States District Court, W.D. Missouri, Western Division.

July 12, 1994.

Alleen Castellani, Asst. U.S. Atty., Kansas City, MO, for plaintiff.

Phillip Nonnemaker, Edward L. Pendleton, Kansas City, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

The FDIC asks the court to dismiss the third-party complaint for the lack of subject matter jurisdiction. The court will deny the motion.

### I. Background

On March 31, 1986, Systems Specialists, Inc. (Systems) obtained a $395,000.00 loan from Superior National Bank (Bank). Each of the defendants owned an interest in Systems and agreed to guarantee the loan in proportion of their ownership interest in Systems. The Bank assigned the loan to the Small Business Administration on September 30, 1992. Sometime later, Systems failed to make its monthly payment and defendants did not honor the guarantee agreement. On December 29, 1993, the United States sued defendants on behalf of the Small Business Administration for $190,597.40 in remaining principal plus interest.

On February 22, 1994, defendants Roger Barbieri and Vito Barbieri filed a third-party complaint against the Bank. Roger and Vito Barbieri allege the Bank promised it would immediately notify them if Systems failed to make any payments. The Bank allegedly did not notify defendants when it knew Systems faced severe financial difficulties. Roger and Vito Barbieri argue the failure to notify them of Systems' financial difficulties resulted in a diminished value of their ownership interest in Systems. Because of the failure to notify, the third-party complaint asks the court to prohibit the Bank from collecting the portion of the loan Roger and Vito Barbieri guaranteed.

On April 14, 1994, the Federal Deposit Insurance Corporation (FDIC) as receiver took ownership of and assumed the liabilities of the Bank. On June 8, 1994, this court substituted the FDIC in place of the Bank as the third-party defendant. The FDIC now asks this court to dismiss the case for the lack of subject matter jurisdiction.

### II. Subject Matter Jurisdiction

■ The court does not have diversity or supplemental jurisdiction. *See,* 28 U.S.C. §§ 1332 & 1367. Unless a federal question exists, the court must dismiss the case for the lack of subject matter jurisdiction. *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991) ("Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.' ").

### A. Financial Institutions Reform, Recovery, and Enforcement Act

The Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) establishes a comprehensive system for handling claims against a failed financial institution. Typically, FIRREA requires everyone who asserts a claim against the Bank and other failed institutions to complete an administrative claims review process. 12 U.S.C. § 1821(d)(5).[1] A claimant must file its claim with the FDIC within ninety days after the FDIC publishes notice that it took ownership of and assumed the liabilities of the failed financial institution. § 1821(d)(3)(B). The FDIC must then allow or disallow the asserted claim within 180 days from the date the claimant files the claim. § 1821(d)(5). While this court may not review a determination to disallow a claim, § 1821(d)(5)(E), a claimant may ask for an agency review of the claim or file suit in this court within sixty

---

1. All subsequent sections refer to title 12 of the United States Code.

days of the earlier of the expiration of the 180–day period or the day the FDIC notifies the claimant that it disallows the claim. § 1821(d)(6)(A).

The crux of the FDIC's argument is this court must dismiss all cases asserting a claim against a failed financial institution which were pending before the FDIC took over ownership of the failed financial institution because the claimants had not exhausted the administrative claims review process. The FDIC bases its argument on § 1821(d)(13)(D):

**Limitation on Judicial Review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Section 1821(d)(13)(D) strips the court of jurisdiction to hear the asserted claim "[e]xcept as otherwise provided" in subsection (d). If the claimant files suit after the FDIC takes over a failed financial institution, the claimant must first exhaust the administrative claims review process. As the court explained earlier, subsection (d) gives this court jurisdiction if a claimant timely files a claim with the FDIC and timely files in this court the earlier of the expiration of the 180–day period or after receiving notice the FDIC disallowed the claim. § 1821(d)(3–6).

Subsection (d) also gives the court jurisdiction to hear a case if the claimant files suit *before* the FDIC takes over a failed financial institution and the claimant timely files any asserted claims with the FDIC. Paragraph five of subsection (d) provides in part: "[s]ubject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." § 1821(d)(5)(F)(ii).

Paragraph twelve gives the FDIC as receiver a ninety-day stay in any judicial action. The reason for the ninety-day stay, as the legislative history explains, is because the "appointment of a ... receiver can often change the character of litigation; the stay gives the FDIC a chance to analyze pending matters and decide how best to proceed." H.R.Rep. No. 541, 101st Cong., 1989 U.S.Code Cong. & Admin.News 86, 127.

■ Reading paragraphs five and twelve together with the legislative history, the FDIC may stay a case that is pending at the time the FDIC takes over a failed financial institution to allow the FDIC to analyze the case, but the court always retains jurisdiction. A contrary reading would render § 1821(d)(12) meaningless and act contrary to the expressed Congressional intention. The court must reject the contrary reading because it must construe the statute so that "every word has some effect." *United States v. Nordic Village, Inc.*, 503 U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181, 189 (1992). If the court lost subject matter jurisdiction over this case the moment the FDIC took over the Bank, then Congress would not have provided for a ninety-day stay for the FDIC to analyze the case. The court's interpretation of § 1821(d)(5)(F)(ii) gives meaning to the stay paragraph and is consistent with the purpose Congress intended to give the paragraph.

A contrary reading would also render § 1821(d)(5)(F)(ii) and § 1821(d)(6)(A) meaningless. Again, paragraph (5)(F)(ii) provides in part that filing a claim with the FDIC "shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of the receiver." (emphasis added). Paragraph (6)(A) states that if the FDIC disallows the claim, "the claimant may request administrative review of the claim ... or file suit on such claim (or *continue* an action commenced before the appointment of the receiver). ..." (emphasis added). If the court is to abide by the rules of statutory construction and give each word some effect then the word "continue" must "imply that a party is proceeding forward in an ongoing case without an interruption in the court's

jurisdiction. A claimant could not 'continue' an action over which the court had been deprived of subject matter jurisdiction. The claimant would have to 'refile' such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction." *Marc Development, Inc. v. FDIC,* 771 F.Supp. 1163 (D.Utah 1991). *See also, Marquis v. Federal Deposit Ins. Corp.,* 965 F.2d 1148, 1153 (1st Cir.1992) ("That asseveration, however, fails to explain why Congress used the verb 'continue' rather than a verb such as 'recommence' or 'refile.' Indeed, the FDIC's recension of the law simply reads the word 'continue' out of the statute."). Thus, basic statutory construction rules provide support for the court's interpretation.

■ The purpose of FIRREA also lends support to this court's interpretation. Congress designed FIRREA to provide an efficient administrative procedure to process claims against failed financial institutions. Interpreting FIRREA to require the federal courts to dismiss all cases asserting a claim against a failed financial institution which were pending before the FDIC took over the institution only to have the case filed again if not administratively resolved to the claimants' satisfaction is the antithesis of the congressional intent to resolve claims efficiently. *Marquis,* 965 F.2d at 1154. Further, such an interpretation fails to promote FIRREA's other policies of "fairness to claimants, minimization of expense, and thoughtful husbanding of scarce judicial resources." *Id.* This court's interpretation will spare claimants the costs of filing their cases again and spare courts the "trouble of starting from ground zero in each and every case in which an administrative settlement does not materialize." *Id.*

■ The court's interpretation does not run afoul of the Eighth Circuit's analysis. In *Bueford v. Resolution Trust Corp.,* 991 F.2d 481, 483 (8th Cir.1993), a bank employee alleged the bank fired her because of her race and age. The employee sued the bank after the Iowa Civil Rights Commission gave her a right to sue letter. More than a year later, the RTC sent the employee a letter that the bank failed and the RTC was acting as the receiver. The letter notified the employee that she had to submit her claim to the RTC by a specified date. The employee did not file a claim with the RTC within the required period. *Id.* The Eighth Circuit held that even though the case was pending before the RTC took over the bank as receiver, the employee still had to timely file a claim with the RTC. *Id.* at 485. In support of it holding that the employee still had to timely file a claim with the RTC, the Eighth Circuit cited a First Circuit case, *Marquis,* 965 F.2d at 1148, approvingly. The *Marquis* court did hold that if a claimant does not timely file an administrative claim, the claimant "forfeits any right to pursue a claim" even if the claimant filed suit prior to the FDIC's takeover of the failed financial institution. *Id.* at 1152. In *Marquis,* at least some of the claimants did timely file a claim with the FDIC. *Id.* The *Marquis* court then went on to hold that "FIRREA did not strip the federal courts of subject matter jurisdiction over civil actions pending against a failed financial institution at the time the FDIC takes over as the institution's receiver." *Id.* at 1155. In short, if a claimant timely files a claim with the FDIC, FIRREA will not require the court to dismiss the case asserting a claim against the failed financial institution which was pending before the FDIC took over the failed financial institution. However, the court will lose jurisdiction if the claimant does not timely file a claim with the FDIC.

■ In the present case, neither party tells the court when or if the FDIC sent Roger and Vito Barbieri notice that they had to submit a claim to the FDIC. Further neither party tells the court if Roger and Vito Barbieri have timely filed their claim with the FDIC. Even if the FDIC sent Roger and Vito Barbieri notice on the same day it took over the Bank, unlike the bank employee in *Bueford,* they can still timely file a claim. The FDIC took over the Bank on April 14, 1994, so Roger and Vito Barbieri have at least until July 13, 1994, to comply with the ninety-day filing period. § 1821(d)(3). The court retains subject matter jurisdiction because Roger and Vito Bar-

bieri can, if they have not already done so, timely file their claim with the FDIC.[2]

### III. Conclusion

It is therefore ORDERED that the Federal Deposit Insurance Corporation's Motion to Dismiss is DENIED.

---

2. This court does express one reservation with the First Circuit's and the Eighth Circuit's analysis. Requiring the court to dismiss a case for the lack of subject matter jurisdiction even if the court had jurisdiction at the time claimant filed the case, runs afoul with the established rule that in determining whether it has jurisdiction, the court looks to the date the complaint was filed. "Subject-matter jurisdiction 'depends on the state of things at the time of the action brought'; if it existed when the suit was brought, 'subsequent events' cannot 'ous[t]' the court of jurisdiction." Gwaltney v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 69, 108 S.Ct. 376, 387, 98 L.Ed.2d 306 (1987) (Scalia, J., concurring) (citations omitted). Because this rule is a judge-made rule, the court does not doubt Congress can change the rule if the rule Congress applies conforms with other constitutional concerns. Neither circuit addresses whether Congress did intend to alter this judge-made rule.